UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA VELOZ BALLACHI,<br><br>Petitioner,<br><br>v.<br><br>PATRICK DIVVER, et al.,<br><br>Respondents. | Case No.:  26-cv-3332 JAO (DDL)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Alexandra Veloz Ballachi's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  Also before the Court is Respondents Patrick Divver's (Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations San Diego Field Office), Markwayne Mullin's (Secretary of the U.S. Department of Homeland Security), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Christopher LaRose's (Warden of the Otay Mesa Detention Center), Acting Attorney General of the United States', U.S. Department of Homeland Security's ("DHS"), and Immigration and Customs Enforcement's (collectively, "Respondents" or the "Government") Return to Habeas Petition.  ECF No. 4.

For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus on due process grounds.

## BACKGROUND

On February 27, 2023, Petitioner, a citizen of Venezuela,[1] entered the United States through the CBP One application. *See* ECF No. 1 at 2. She was detained for a short period of time and then released on humanitarian parole to pursue her asylum claim. *Id.* She has not had issues while on parole. *See id.*

On May 6, 2026, Petitioner was a passenger in a vehicle with her boyfriend driving in Point Loma, California. *See* ECF No. 1-5 at 1. Officers from the DHS Immigration and Customs Enforcement ("ICE") division stopped the vehicle and asked Petitioner for her identification without asking any other questions and only asked her boyfriend for his name. *See id.* ICE officers then proceeded to arrest Petitioner but did not provide any explanation. *See id.* Upon her arrest, she received a Notice to Appear, which set a hearing before an immigration judge on May 19, 2026. *See* ECF No. 1-6 at 1. No details have been provided about the May 19, 2026 hearing, including whether it was even held.

Petitioner alleges that her detention violates the Due Process Clause of the Fifth Amendment. *See* ECF No. 1 at 3.

## LEGAL STANDARD

A federal prisoner challenging the execution of her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of her confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral

---

[1] Petitioner's petition states she is a Mexican national, but her documents state otherwise. *Compare* ECF No. 1 at 2 *with* ECF No. 1-4 at 1.

issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

## I.    Jurisdiction

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g).  *See* ECF No. 4 at 2–4.  Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  Respondents argue that Petitioner's claims arise from DHS's decision to commence removal proceedings.  *See* ECF No. 4 at 3.  The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take:  his 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)).  Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."  *Id.* at 997.  It also does not bar due process claims.  *See Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order.  Rather, Petitioner is challenging her re-detention without notice or justification.  *See* ECF No. 1 at 4.  Petitioner is enforcing her "constitutional rights to due process in the context of the removal proceedings—*not*

26-cv-3332 JAO (DDL)

the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1074 (S.D. Cal. 2025).  Therefore, § 1252(g) does not strip the Court of jurisdiction.

**II.     Due Process**

Petitioner argues that the summary revocation of her parole without notice or a hearing violates the Due Process Clause.  *See* ECF No. 1 at 3.  Respondents do not address Petitioner's constitutional argument, but they argue that her parole had expired at the time of her arrest and she was served with a Notice to Appear that terminated her parole status, so she was subject to mandatory detention as provided under 8 U.S.C. § 1225.  *See* ECF No. 4 at 4–5.  The Court concludes that Petitioner's due process rights were violated.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001).  "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted).  Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'"  *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).  "Thus, even when ICE has the initial discretion to detain or release a noncitizen

26-cv-3332 JAO (DDL)

pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Id.* (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225, Petitioner is subject to mandatory detention and therefore her alleged statutory and constitutional violations fail. *See* ECF No. 4 at 5 (citing 8 U.S.C. § 1182(d)(5)(A) for the proposition that immigrants temporarily paroled are not admitted). The Court disagrees. The District Court has previously held that, while a noncitizen may not be deemed admitted in the United States pursuant to § 1182(d)(5)(A), the noncitizen is not necessarily subject to mandatory detention, depending on the length of time they have been in the country. *See e.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025) (finding petitioner who was granted humanitarian parole under § 1182(d)(5)(A) "is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."). Here, Petitioner has been granted humanitarian parole and is not a newly arrived noncitizen seeking admission at the border, as she has been in the United States since February 2023. *See* ECF No. 1 at 2. Upon arrival, she was determined to not be a danger to the community or a flight risk. *See id.* at 4. Petitioner is not merely an "applicant for admission" at the border with minimal due process rights; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1129 (E.D. Cal. 2025) (finding petitioner had a protected liberty interest in his release).

Respondents argue that Petitioner's parole had already expired when she was detained, and so she is in custody lawfully. *See* ECF No. 4 at 4. But many courts have

26-cv-3332 JAO (DDL)

concluded that a petitioner's private interest did not expire along with her parole agreement. *See*, *e.g.*, *Nayem v. LaRose*, 2026 WL 915023, at *3 (S.D. Cal. Apr. 3, 2026); *Tunaca-Galindo v. Att'y Gen. of United States*, 2026 WL 1229587, at *2 (S.D. Cal. May 5, 2026). The expiration of one's parole "does not somehow obviate the need for the government to provide an individualized hearing prior to detaining the parolee." *L.M. v. Noem*, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026) (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025)).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before she can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See Mathews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of her due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to her humanitarian parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Although Petitioner does not provide as many facts that are regularly included in similar habeas petitions, such as her community ties and asylum application status, she nonetheless retains a private interest to be out of custody when "the proceedings [that led to her being granted parole] have created a

protectable expectation of [her] due process rights in [her] removal proceedings and the fair procedures this country guarantees." *Noori*, 807 F. Supp. 3d at 1165.  Indeed, Respondents do not directly respond to Petitioner's arguments regarding her protected liberty interest.

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard.  ECF No. 1 at 5.  While Petitioner was given a Notice to Appear at the time of her arrest and a hearing was set before an immigration judge—even assuming the hearing went forward on May 19, 2026, these actions do not comport with due process because she was entitled to process *before* she was detained.  *See e.g.*, *Tunaca-Galindo*, 2026 WL 1229587, at *1–2.  Since DHS's initial determination that Petitioner should be paroled because she posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings.  Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ."  *Saravia*, 280 F. Supp. 3d at 1760.

Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of her parole.  *See generally* ECF No. 4.  "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention."  *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

26-cv-3332 JAO (DDL)

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low."  *See id.* at 1036; *Matute*, 807 F. Supp. 3d at 1130; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing.  *See generally* ECF No. 4.

Therefore, because Respondents detained Petitioner by revoking her parole in violation of the Due Process Clause, her detention is unlawful.  *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) on due process grounds, and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of her preexisting parole.  *See Ramirez Tesara*, 800 F. Supp. 3d at 1138 ("[T]he Court will restore Petitioner to this quasi-supervised status— i.e., following the terms of the parole agreement as if it were still in force—as was the status quo from [the expiration of the petitioner's parole] through his detention.").

The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of her parole and a hearing before a neutral decision maker to determine whether detention is warranted.  The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.  *See, e.g.*, *Matute*, 807 F. Supp. 3d at 1133; *Pinchi*, 792 F. Supp. 3d at 1038; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025); *Isaev, v. LaRose, et al.*, 2026 WL 1162758, at *3 (S.D. Cal. Apr. 29, 2026).  The Parties are **ORDERED** to file a Joint Status Report by June 25, 2026, confirming that

26-cv-3332 JAO (DDL)

Petitioner has been released.  As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

   **IT IS SO ORDERED.**

Dated:  June 18, 2026



Jill A. Otake
United States District Judge

26-cv-3332 JAO (DDL)